Argued November 3, 1967, reargued March 4, reversed and
remanded March 27, 1968

DERRY, *Respondent, v.* BABCOCK,
*Appellant.*

438 P. 2d 1008

*Charles W. Creighton, Jr.,* Salem, argued and re-
argued the cause for appellant. With him on the briefs
was John F. Steelhammer, Salem.

*J. Ray Rhoten,* Salem, argued and reargued the cause for respondent. With him on the brief were Rhoten, Rhoten & Speerstra, Salem, and Murray D. Agate, Eugene.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

O'CONNELL, J.

Plaintiff brought an action of ejectment against defendants. Defendant Babcock answered, alleging that the transaction was a mortgage and prayed that the court enter a decree setting a period of time within which Babcock would have the privilege of paying the amount due plaintiff and that he be given additional time in which to redeem should plaintiff bring a foreclosure suit. The trial court entered a decree dismissing the answer and granting plaintiff's prayer for relief. Defendant appeals.

In 1958 defendant Babcock entered into a land sale contract with Walter and Grace Wightman for the purchase of a 110-acre ranch. The total price was $30,000. On August 31, 1962, the Wightmans obtained a decree of strict foreclosure and Babcock was given 90 days to redeem. Defendant approached plaintiff and asked for a loan of the amount needed to redeem the property. Plaintiff refused to make the loan, but agreed instead to redeem the property, take a deed from the Wightmans and give Babcock an option to purchase it.

An agreement was executed on December 7, 1962 granting Babcock an option to purchase the property within three years for the price of $16,396.32 (the amount Derry paid Wightmans to redeem the prop-

erty), together with interest at 8% from November 23, 1962 (the date of the vendee's assignment of the right to redeem), the interest being payable only in the event that the option was exercised. Defendant Babcock also signed a $1,000 note which he termed a "bonus" for making the "loan." Under the agreement, Babcock was to continue in possession of the premises, pay the taxes, maintain improvements, and carry fire insurance on the buildings.

Plaintiff contends that the transaction gave Babcock nothing more than an option to purchase the property and that the option expired without being exercised.

It is defendant's theory that the transfer of the deed from the Wightmans to Derry, coupled with the option to Babcock to purchase, was in fact a mortgage.

■ We believe that the transaction between plaintiff Derry and defendant Babcock was a mortgage. At the ouset it is important to make some general observations concerning the use of option contracts as a device to avoid the necessity of foreclosure in security transactions.

If a transaction is in fact designed only to provide security rather than to effectuate a sale with an option to purchase, it is immaterial how clearly the lender proclaims in the instrument or in the preliminary negotiations that a mortgage is not intended. It is clear in all such cases that the lender desires to avoid foreclosure and the transaction takes the form it does in order to accomplish his objective. But equity will not permit him to take advantage of the necessitous circumstances of the borrower in these cases. This attitude of courts of equity is well explained in *Russell v. Southard*, 53 U S (12 How) 139, 151 (1851):

"In respect to the written memorandum, it was

clearly intended to manifest a conditional sale. Very uncommon pains are taken to do this. Indeed, so much anxiety is manifested on this point, as to make it apparent that the draftsman considered he had a somewhat difficult task to perform. But it is not to be forgotten, that the same language which truly describes a real sale, may also be employed to cut off the right of redemption, in case of a loan on security; that it is the duty of the court to watch vigilantly these exercises of skill, lest they should be effectual to accomplish what equity forbids; and that, in doubtful cases, the court leans to the conclusion that the reality was a mortgage, and not a sale. [citing cases.]"

■ Another point should be made clear at the outset. Plaintiff asserts that to establish a mortgage defendant must prove that he became a debtor to plaintiff as a result of the transaction granting him an option to purchase. The notion that a personal indebtedness is necessary to establish a mortgage in the present case is erroneous. It is elementary that a mortgage can be created without imposing personal liability upon the mortgagor.[①] In the situation where the lender desires to avoid the necessity of foreclosure, he designedly sets up the transaction so that it does not impose personal liability upon the borrower. Again, *Russell v. Southard, supra* at 151, will serve to explain:

"The memorandum does not contain any promise by Russell to repay the money, and no personal security was taken; but it is settled that this circumstance does not make the conveyance less effectual as a mortgage. *Floyer v. Lavington,* 1 P. Wms., 268; *Lawley v. Hooper,* 3 Atk., 278; *Scott v. Fields,* 7 Watts. (Pa.), 360; *Flagg v. Mann,* 2 Sumn., 533; *Ancaster v. Mayer,* 1 Bro.C.C., 464. And consequently it is not only entirely consistent

---

[①] For example, see Osborne on Mortgages, p. 294, n. 22.

with the conclusion that a mortgage was intended, but in a case where it was the design of one of the parties to clothe the transaction with the forms of a sale, in order to cut off the right of redemption, it is not to be expected that the party would, by taking personal security, effectually defeat his own attempt to avoid the appearance of a loan."

We begin, then, in an analysis of the facts of the present case, with the assumption that the absence of an agreement on the part of Babcock obligating him personally to pay Derry does not preclude the creation of a mortgage in this case. We are convinced that a security transaction was intended. Our reasons are as follows:

The manner in which the transaction was treated by the parties evidences the intention to create in Derry a security interest rather than absolute ownership. This is not a case where Babcock, seeing a parcel of land which he wished to purchase and in which he had an interest, enlisted Derry's aid in acquiring it. Babcock had an interest in the property in question and was attempting to save his equity when he approached Derry. Babcock had paid approximately $14,000 on a contract which called for a total payment of $30,000. Although a part of the $14,000 paid on the purchase price was derived from the sale of interests in the land being purchased, it would appear that the land was worth more than the balance amounting to $16,396.32 which Derry paid for the land.[2] A

---

[2] Babcock received $10,000 for land conveyed or taken in condemnation proceedings by Weyerhaeuser Timber Company. Babcock testified that $3,000 of this amount was paid out for attorney's fees and the balance was paid to Wightman, his vendor. Babcock testified that he also received $500 credit for two acres reserved by Wightman. Babcock testified that he received approximately $3,500 from the sale of timber from the land. An

substantial disparity between the value of the land and the purported option price is evidence of a security transaction. Granted that the disparity between the contract price of $30,000 and the $16,396.32 paid for the land by Derry was reduced by sales of parts of the tract to others, there still was a disparity and, if defendant's testimony as to improvements is accepted, the disparity would be substantial. It does not seem likely that defendant would have struggled as he did to keep alive his contract with Wightman if the land was worth no more than the balance due on the contract.

But assuming that the disparity was not great, there is other evidence indicating that the transaction between Derry and Babcock was a mortgage and not a sale with an option to repurchase. The option contract called for the payment of interest on the option price of $16,396.32. True, the interest was not payable unless Babcock took up the option. But it is a rather strange form of option that provides for an increasing purchase price during its life, and the fact that the increment is measured exactly by the amount of interest which would be payable if the stated price were loaned makes it appear that the parties were thinking in terms of a loan.

Perhaps more important is the fact that the option agreement gave Babcock the right to possession not as lessee, but as if he were continuing his possession as owner of the beneficial interest. It is not un-

appraiser valued the buildings on the land at $20,000 and the land at $35,000, the appraisal being based upon the theory that the highest and best use of the property was for recreational purposes, and specifically for a golf course. Babcock also testified that he had made improvements which added to the value of the land and buildings.

usual in sales with an option to repurchase for the purchaser to lease the property back to the Seller-optionee. That was not done here. The option made no provision for the payment of rent. Babcock was obligated to pay the property taxes and fire insurance on the buildings and he agreed to keep "improvements" on the property in good repair, but these obligations are as consistent with a relationship of mortgagor and mortgagee as with a relationship of landlord and tenant. Babcock continued to occupy and use the land as he did before the execution of the option contract. He even leased a portion of it to a third person.

We have, then, a situation in which Babcock was privileged to occupy the land without any obligation to pay rent or interest during the life of the option. Derry was assured of interest for the option term if the option was taken up but not otherwise. Babcock had also executed a promissory note to Derry for $1,000 as consideration for the granting of the option. Apparently he felt that the $1,000 note executed by Babcock, together with the disparity between the value of the land and the price he paid Wightman, was ample to compensate him for his investment in the event that Babcock could not reimburse him.

Events subsequent to the execution of the option contract show that Derry regarded the transaction as a loan obligating Babcock to pay interest. Although the option did not expire until December, 1965 Derry, through his attorney, sent a letter to Babcock and Babcock's tenant, Mrs. Jean Wilson, on May 31, 1963, which read as follows:

"Re: OPTION COVERING MARCOLA
PROPERTY
"Dear Mrs. Wilson and Mr. Babcock:
"You are hereby notified that all of your rights

under the option to purchase the property described in Exhibit 'A' attached hereto shall be forfeited on June 3, 1963, unless the following conditions are met:

"Interest in the amount of $655.85 must be paid as provided for in the said option and amendment thereto, insurance premium in the amount of $79.00 must be paid and all delinquent taxes must be paid.

"In the event these payments are not received by noon on June 3, 1963, all of your rights under the option dated December 7, 1962, shall be completely terminated and I will retake possession.

"Yours very truly,

J. Ed. Derry

Merle A. Long
Attorney for J. Ed. Derry"

As defendant points out, the $655.85 demanded in the letter is arrived at by computing interest at 8% for six months on $16,396.32. The letter was part of a scheme by Derry and Babcock to evict Mrs. Wilson, who was occupying the premises. Before the letter was written Babcock delivered to Derry a handwritten statement which read as follows:

"This 8th Day of Dec 1962 I John T Babcock promise to pay J. E. Derry on ranch at Mabel Interest semi-annually first payment due May 23-1963.

"If unable to pay within ten day's will surrender same without force

"John T. Babcock"

Although the writing was dated December 8, 1962, it was actually executed in May, 1963. It laid the foundation for the letter later sent to Mrs. Wilson and Bab-

cock demanding payment of interest in the amount of $655.85.

The fact that the recitation of the obligation to pay interest was a part of a scheme to evict Mrs. Wilson and was not intended to create a legal obligation to pay the interest does not negative the idea that the parties intended the original transaction to constitute a security transaction. If anything, it tends to support defendant's theory because the subterfuge they devised to evict the tenant took the form of foreclosing on Babcock as a defaulting debtor rather than the equally plausible form of ousting him as a lessee who had failed to pay rent.

Defendant also introduced into evidence nine receipts made out and signed by plaintiff's son who was acting as plaintiff's agent, showing monthly payments of $125 and reciting that they were "interest on ranch."

It is not clear why Babcock felt obligated to pay $125 a month nor why Derry felt that he was entitled to receive it and to dispossess Babcock for not paying it. As previously noted, the option contract obligated Babcock to pay interest only after taking up the option. The important fact is that the parties did denominate it as interest and each indicated by his conduct that he understood that there was an obligation to pay it. Derry contends that the monthly payments were to reimburse him for taxes and insurance which Babcock had failed to pay. But the payments made by Babcock exceeded the unpaid taxes and insurance. Moreover, defendant introduced into evidence a handwritten statement dated January 12, 1966 and signed by both Babcock and Derry setting forth the interest paid by Babcock to Derry during the year 1965. Bab-

cock testified that Derry had requested the statement for income tax purposes. The statement read as follows:

> "Jan 12-66
>
> | | |
> |---|---:|
> | Interest on House in Albany | 480.00 |
> | Interest on Commercial Property in Albany | 1413.36 |
> | Interest on Ranch at Marcola | 1500.00 |
> | | 3393.36 |
>
> [signed] John T. Babcock
> J. E. Derry."

Putting all of the evidence together, we think that it spells out the intention of both Babcock and Derry to enter into a security transaction but to execute it in a form which would benefit Derry by avoiding the necessity of foreclosure.

On appeal defendant Babcock prays that the judgment of the trial court be reversed and that he be granted the right to redeem the property by the payment of $16,396.32 plus interest at 8% from November 2, 1962, less any interest paid by defendant. Defendant does not pray in the alternative for foreclosure by sale.

The cause is remanded with directions to enter a decree granting defendant the right to redeem within 20 days from the entry of this mandate and in default thereof to be forever foreclosed.

Perry, C. J., dissents.